FILED
CLERK, U.S. DISTRICT COURT
3/8/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: _____VAM_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

November 2021 Grand Jury

| UNITED STATES OF AMERICA, | CR 2:22-cr-00077-ODW |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1344(2): Bank Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1957: Transactional Money Laundering; 18 U.S.C. § 982: Criminal Forfeiture] |
| RAGHAVENDER REDDY BUDAMALA, aka "Reddy Raghav Budamala," | |
| Defendant. | |

The Grand Jury charges:

COUNTS ONE THROUGH SIX

[18 U.S.C. §§ 1344(2), 2(b)]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.   Defendant RAGHAVENDER REDDY BUDAMALA, also known as "Reddy Raghav Budamala," resided in Irvine, California.

2.   Defendant BUDAMALA was the manager of Hayventure LLC ("Hayventure"), Pioneer LLC ("Pioneer"), and XC International LLC ("XC International"), three shell companies with no substantial business operations or employees.

1       3.   Celtic Bank ("Celtic"), Radius Bank ("Radius"), Newtek
2  Small Business Finance ("Newtek"), and Amur Equipment and Finance
3  ("AEF") were financial institutions that the Federal Deposit
4  Insurance Company insured and that were approved Small Business
5  Administration ("SBA") lenders.

### Paycheck Protection Program

7       4.   The Coronavirus Aid, Relief, and Economic Security
8  ("CARES") Act was a federal law enacted in March 2020 to provide
9  emergency financial assistance to the millions of Americans who
10 suffered from the economic consequences of COVID-19.
11      5.   The CARES Act authorized forgivable loans to small
12 businesses for employee retention and certain business expenses
13 through an SBA program called the Paycheck Protection Program ("PPP"
14 or "the program").
15      6.   The program authorized qualifying small businesses and
16 other organizations to receive loans that the SBA guaranteed and that
17 qualified for loan forgiveness. To qualify for the program, the
18 applicant business had to use the PPP loan proceeds on payroll costs,
19 mortgage interest, rent, and utilities, and must have been operating
20 prior to February 15, 2020.
21      7.   On the PPP loan application, the applicant was required to
22 truthfully state, among other things, the business's average monthly
23 payroll expenses and number of employees, figures that were used to
24 calculate the amount of loan proceeds the small business was eligible
25 to receive under the program. The applicant business was also
26 required to provide documentation showing its payroll expenses.
27      8.   The SBA administered the program and had authority over the
28 PPP loans. However, approved lenders -- including Celtic, Radius,

Newtek, and AEF -- administered the loans. The approved lenders received and processed the PPP applications and supporting documentation, then made the loans using their own funds.

B.   THE SCHEME TO DEFRAUD

9.   Beginning in or about March 2020, and continuing through in or about February 2022, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendant BUDAMALA, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, executed, and attempted to execute a scheme to obtain money and property owned by and in the custody and control of Celtic, Radius, Newtek, AEF, and the SBA by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

10.   The fraudulent scheme operated and was carried out, in substance, as follows:

**Hayventure**

a.   On or about April 30, 2020, defendant BUDAMALA applied to Celtic for a PPP loan on behalf of Hayventure, stating on the application that he was the sole owner of Hayventure. On the loan application, defendant BUDAMALA falsely represented to Celtic and the SBA, among other things, that Hayventure had 10 employees and monthly payroll of $94,639. In support of the application, defendant BUDAMALA submitted to Celtic a forged bank statement and false Internal Revenue Service ("IRS") Forms 941 ("Forms 941").

b.   Defendant BUDAMALA caused Celtic to rely on the false representations and certifications defendant BUDAMALA made on the Hayventure PPP loan application, and on or about May 4, 2020, to

credit an Azlo Bank ("Azlo") account ending in 5756, that defendant BUDAMALA had opened in the name of Hayventure ("Azlo 5756"), with $236,597 in PPP loan proceeds.

      c.  On or about September 14, 2021, defendant BUDAMALA applied to Celtic and the SBA to have the Hayventure PPP loan forgiven. On the forgiveness application, defendant BUDAMALA falsely represented, among other things, that Hayventure had 10 employees at the time of the forgiveness application, and that Hayventure used all of the PPP loan proceeds on payroll costs. In support of the forgiveness application, defendant BUDAMALA submitted to Celtic false documents including false payroll summaries.

### Pioneer

      d.  On or about June 4, 2020, defendant BUDAMALA acquired Pioneer, a shell company with no substantial business operations or employees.

      e.  On or about June 10, 2020, defendant BUDAMALA applied to Radius for a PPP loan on behalf of Pioneer ("the first Pioneer loan"). On the first Pioneer loan application, defendant BUDAMALA falsely represented to Radius and the SBA, among other things, that Pioneer had 33 employees and monthly payroll of $264,000. In support of the first Pioneer loan application, defendant BUDAMALA submitted to Radius false documents, including false Forms 941.

      f.  Defendant BUDAMALA caused Radius to rely on the false representations and certifications defendant BUDAMALA made on the first Pioneer loan application and, on or about June 24, 2020, to credit an Azlo account ending in 7635, that defendant BUDAMALA had opened in the name of Pioneer ("Azlo 7635"), with $660,000 in PPP loan proceeds.

4

g. On or about October 7, 2020, defendant BUDAMALA applied to Radius and the SBA to have the first Pioneer loan forgiven. On the forgiveness application, defendant BUDAMALA falsely represented, among other things, that Pioneer had 33 employees at the time of both the loan and forgiveness applications, and that Pioneer used all of the PPP loan proceeds on payroll costs. In support of the forgiveness application, defendant BUDAMALA submitted to Radius false payroll summaries, a false Form 941, and false profit and loss statements.

h. On or about January 20, 2021, defendant BUDAMALA applied to Radius for a second PPP loan on behalf of Pioneer ("the second Pioneer loan"). On the second Pioneer loan application, defendant BUDAMALA falsely represented to Radius and the SBA, among other things, that Pioneer had 33 employees and monthly payroll expenses of $264,000. In support of the second Pioneer loan application, defendant BUDAMALA submitted to Radius a forged letter from Azlo, a false Form 941, and false payroll summaries.

i. Defendant BUDAMALA caused Radius to rely on the false representations and certifications defendant BUDAMALA made on the second Pioneer loan application and, on or about March 3, 2021, to credit Azlo 7635 with $660,000 in PPP loan proceeds.

**XC International**

j. On or about August 6, 2020, defendant BUDAMALA applied to Newtek for a PPP loan on behalf of XC International ("the first XC International loan"). On the first XC International loan application, defendant BUDAMALA falsely represented to Radius and the SBA, among other things, that XC International had 42 employees and monthly payroll of $637,000. In support of the first XC International loan

5

application, defendant BUDAMALA submitted to Newtek a forged letter from Azlo, a false Form 941, and false payroll summaries.

   k. Defendant BUDAMALA caused Newtek to rely on defendant BUDAMALA's false representations and certifications on the first XC International loan application, and on or about August 10, 2020, to credit Azlo 5756 with $1,592,500 in PPP loan proceeds.

   l. On or about August 10, 2020, four days after he had applied for the first XC International loan, defendant BUDAMALA acquired XC International, a shell company with no substantial business operations or employees.

   m. On or about February 2, 2021, defendant BUDAMALA applied to Newtek for a second PPP loan on behalf of XC International. On the loan application, defendant BUDAMALA falsely represented to Newtek and the SBA, among other things, that XC International had 42 employees and monthly payroll expenses of $637,000. In support of this application, defendant BUDAMALA submitted to Newtek false documents, including false payroll summaries and false profit and loss statements.

   n. On or about March 19, 2021, following Newtek's denial of XC International's second PPP loan application, defendant BUDAMALA applied to AEF for a second PPP loan on behalf of XC International ("the second XC International loan"). On the loan application, defendant BUDAMALA falsely represented to AEF and the SBA, among other things, that XC International had 42 employees with an average monthly payroll of $737,000. In support of the application, defendant BUDAMALA submitted to AEF a forged Azlo bank statement, a forged letter from Azlo, and false Forms 941.

o. Defendant BUDAMALA caused AEF to rely on the false representations and certifications defendant BUDAMALA made on the second XC International loan application, and on or about March 30, 2021, to credit Azlo 5756 with $1,842,500 in PPP loan proceeds.

**Fraudulent Expenditure of Loan Proceeds**

p. Once Celtic, Radius, Newtek, and AEF funded the PPP loans to Hayventure, Pioneer, and XC International, defendant BUDAMALA -- in contravention of his promises on the PPP loan applications to spend the loan proceeds on supporting those companies' payroll and operations -- used the SBA loan proceeds for personal expenditures, including to pay for personal retail purchases, living expenses, and personal legal expenses; purchase real estate for investment purposes; and fund investment accounts including, an account at TD Ameritrade, that defendant BUDAMALA held personally.

C.  EXECUTIONS OF THE FRAUDULENT SCHEME

11. On or about the following dates, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendant BUDAMALA committed and willfully caused others to commit the following acts, each of which constituted an execution or attempted execution of the fraudulent scheme:

| COUNT | DATE | ACT |
|---|---|---|
| ONE | 4/30/20 | Submission of an application for a PPP loan to Celtic in the name of Hayventure (Execution). |
| TWO | 6/10/20 | Submission of an application for a PPP loan to Radius in the name of Pioneer (Execution). |
| THREE | 8/6/2020 | Submission of an application for a PPP loan to Newtek in the name of XC International (Execution). |

| COUNT | DATE | ACT |
| --- | --- | --- |
| FOUR | 1/20/2021 | Submission of an application for a PPP loan to Radius in the name of Pioneer (Execution). |
| FIVE | 2/2/2021 | Submission of an application for a PPP loan to Newtek in the name of XC International (Attempted Execution). |
| SIX | 3/19/2021 | Submission of an application for a PPP loan to AEF in the name of XC International (Execution). |

                         COUNT SEVEN

                       [18 U.S.C. § 1343]

    12.  The Grand Jury realleges paragraphs 1 through 8 and 10 of this Indictment here.

A.   INTRODUCTORY ALLEGATIONS

                **Economic Injury Disaster Loan Program**

    At times relevant to this Indictment:

    13.  An Economic Injury Disaster Loan ("EIDL") was an SBA-administered loan program designed to provide assistance to small businesses that suffered substantial economic injury as a result of a declared disaster. An EIDL loan helped businesses meet financial obligations that could have been met had the disaster not occurred. It provided relief from economic injury that the disaster caused and permitted businesses to maintain a reasonable working capital position during the disaster period.

    14.  In March 2020, due to the COVID-19 pandemic, the SBA issued an Economic Injury Disaster Loan declaration. The declaration made EIDL loans available nationwide to small businesses to help alleviate the economic injury that COVID-19 caused.

B.   THE SCHEME TO DEFRAUD

    15.  Beginning in or about March 2020, and continuing through in or about February 2022, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendant BUDAMALA, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the SBA as to material matters, and to obtain moneys, funds, assets, and other property owned by and in the custody and control of the SBA by means of material false and

fraudulent pretenses, representations, and promises, and the concealment of material facts.

16. The fraudulent scheme operated and was carried out, in substance, as follows:

    a. On or about June 18, 2020, defendant BUDAMALA electronically applied to the SBA for an EIDL loan on behalf of Hayventure. On the loan application, defendant BUDAMALA falsely represented to the SBA, among other things, that Hayventure had 13 employees, that Hayventure had $264,000 in monthly payroll expenses, and that he would use the loan proceeds for the operation of Hayventure.

    b. Defendant BUDAMALA caused the SBA, through the United States Department of the Treasury, to rely on defendant BUDAMALA's false representations and certifications in the Hayventure EIDL application, and on or about June 22, 2020, to credit Azlo 5756 with $149,900 in EIDL loan proceeds.

C.   <u>USE OF THE WIRES</u>

17. On or about June 18, 2020, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, defendant BUDAMALA transmitted and caused the transmission of an electronic application to the SBA for an EIDL loan on behalf of Hayventure by means of wire and radio communication in interstate commerce.

## COUNTS EIGHT THROUGH TEN

[18 U.S.C. §§ 1957, 2(b)]

18. The Grand Jury realleges paragraphs 1 through 8, 10, 12, and 13 of this Indictment here.

19. On or about the dates set forth below, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendant BUDAMALA, knowing that the funds involved represented the proceeds of some form of unlawful activity, engaged in and willfully caused others to engage in the following monetary transactions, in criminally derived property of a value greater than $10,000, which property, in fact, was derived from specified unlawful activity, namely, bank fraud, committed in violation of Title 18, United States Code, Section 1344(2), as charged in Counts One through Six of this Indictment, and wire fraud, committed in violation of Title 18, United States Code, Section 1343, as charged in Count Seven of this Indictment:

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| EIGHT | 03/29/2021 | Transfer of $970,000 from a Citibank account ending 4850 in the name of defendant BUDAMALA ("Citibank 4850") to a First Midwest Bank NA account in the name of Company 1. |
| NINE | 07/02/2021 | Transfer of $578,115 from Citibank 4850 to a Comerica Bank California account in the name of Company 2. |
| TEN | 07/27/2021 | Transfer of $1,211,487.30 from Citibank 4850 to a First American Trust FSB account in the name of Company 3 for a real estate investment. |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of the defendant's conviction of the offenses set forth in any of Counts One through Seven of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of the defendant's conviction of the offenses set forth in any of Counts Eight through Ten of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) Any property, real or personal, involved in such offense, and any property traceable to such property; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the

1 | course of the money laundering offense unless the defendant, in
2 | committing the offense or offenses giving rise to the forfeiture,
3 | conducted three or more separate transactions involving a total of
4 | $100,000.00 or more in any 12-month period.

                                    A TRUE BILL

                                    _____/S/_____
                                    Foreperson

TRACY L. WILKISON
United States Attorney

*[signature]*

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

KRISTEN A. WILLIAMS
Assistant United States Attorney
Deputy Chief, Major Frauds Section

GREGORY BERNSTEIN
Assistant United States Attorney
Major Frauds Section

14