TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
GREGORY BERNSTEIN (Cal. Bar No. 299204)
Assistant United States Attorney
Major Frauds Section
      1100 United States Courthouse
      312 North Spring Street
      Los Angeles, California
      Telephone: 213-894-3183
      Email:    Gregory.Bernstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                UNITED STATES DISTRICT COURT

             FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 22-77-ODW |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT RAGHAVENDER REDDY BUDAMALA |
| v. | |
| Raghavender Reddy Budamala, aka "Reddy Raghav Budamala," | |
| Defendant. | |

     1.   This constitutes the plea agreement between Raghavender

Reddy Budamala (aka "Reddy Raghav Budamala") ("defendant" or

"Budamala") and the United States Attorney's Office for the Central

District of California (the "USAO") in the above-captioned case.

This agreement is limited to the USAO and cannot bind any other

federal, state, local, or foreign prosecuting, enforcement,

administrative, or regulatory authorities.

                    DEFENDANT'S OBLIGATIONS

     2.   Defendant agrees to:

          a.   At the earliest opportunity requested by the USAO and

provided by the Court, appear and plead guilty to counts one and ten

                              1

of the indictment in <u>United States v. Raghavender Reddy Budamala</u>, CR 22-77-ODW, which charge defendant in count one with bank fraud, in violation of 18 U.S.C. § 1344(2); and in count ten with transactional money laundering, in violation of 18 U.S.C. § 1957.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime. However, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all

of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012. Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.   Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

3.   Defendant further agrees:

a.   To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to,

i.   The real property described in the bill of particulars filed at ECF 23 in United States v. Raghavender Reddy Budamala, CR 22-77-ODW;

ii.  $1,892,706.33 in in bank funds seized pursuant to a federal seizure warrant executed on or about February 23, 2022, from TMD Ameritrade account ending in 8743 in the name of Budamala;

iii. $819.028.07 in bank funds seized pursuant to a federal seizure warrant executed on or about February 22, 2022, from Citibank account ending in 6558 in the name of Hayventure LLC;

iv.   $27,930.22 in bank funds seized pursuant to a federal seizure warrant executed on or about February 22, 2022, from Bank of America account number ending in 8343 in the name of Reddy Budamala;

v.   $970,000 in funds invested in CMB Infrastructure Investment Group 75 LP;

vi.   $250,000 in funds invested in NHK Mansfield LP;

vii.   $150,000 in funds invested in 529 Investment Plan;

viii.   $9,998 in cryptocurrency invested on the Gemini Trust cryptocurrency exchange; and

ix.   Funds previously contained in the Bank of America account ending in 7430 (collectively, the "Forfeitable Property").

b.   To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Property and to the forfeiture of the assets.

c.   That the Preliminary Order of Forfeiture shall become final as to the defendant upon entry.

d.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Property, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

e.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Property. If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf

of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Property. Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

f.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

g.   Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

h.   To prevent the transfer, sale, destruction, or loss of the Forfeitable Property to the extent defendant has the ability to do so.

i.   That forfeiture of Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose, except that the Attorney General or its designee, the Money Laundering and Asset Recovery Section of the Department of Justice, may, in its sole discretion, approve a restoration petition to have the Forfeitable Property applied to the restitution award.

j.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and

equitable defenses to the forfeiture of the Forfeitable Property in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment. Defendant acknowledges that the forfeiture of the Forfeitable Property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

<u>THE USAO'S OBLIGATIONS</u>

4.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the Court does not depart downward in offense level or criminal history category.

e.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move

for an additional one-level reduction if available under that section.

f.   Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. §§ 1001, 1014, 1028, 1028A, 1029, 1341, 1343, 1344, 1956, or 1957, arising out of defendant's conduct described in the agreed-to factual basis set forth in this agreement. Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

<u>NATURE OF THE OFFENSE</u>

5.   Defendant understands that for defendant to be guilty of the crime charged in count one, that is, bank fraud, in violation of 18 U.S.C. § 1344(2), the following must be true: First, defendant knowingly devised a plan or scheme to obtain money or property from the financial institution specified in the indictment by false promises or statements. Second, the promises or statements were material, that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property. Third, defendant acted with the intent to defraud. Fourth, the financial institution was federally chartered or insured.

A defendant's belief that the victims of the fraud will be paid in the future or will sustain no economic loss is no defense to the crime.

6.    Defendant understands that for defendant to be guilty of the crime charged in count ten, that is, transactional money laundering, in violation of 18 U.S.C. § 1957, the following must be true: First, defendant knowingly engaged or attempted to engage in a monetary transaction. Second, defendant knew the transaction involved criminally derived property. Third, the property had a value greater than $10,000. Fourth, the property was, in fact, derived from one or more of the specified unlawful activities alleged in the indictment. Fifth, the transaction occurred in the United States.

The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate commerce, of funds or a monetary instrument by, through, or to a financial institution.

The term "criminally derived property" means any property constituting, or derived from, the proceeds obtained from a criminal offense. The government must prove that defendant knew that the property involved in the monetary transaction constituted, or was derived from, proceeds obtained by some criminal offense. The government does not have to prove that defendant knew the precise nature of that criminal offense, or knew the property involved in the transaction represented the proceeds of one or more of the specified unlawful activities alleged in the indictment.

Although the government must prove that, of the property at issue more than $10,000 was criminally derived, the government does

1  not have to prove that all the property at issue was criminally

2  derived.

3  <u>PENALTIES AND RESTITUTION</u>

4      7.   Defendant understands that the statutory maximum sentence

5  that the Court can impose for a violation of 18 U.S.C. § 1344(2) is:

6  30 years' imprisonment; a five-year period of supervised release; a

7  fine of $1,000,000 or twice the gross gain or gross loss resulting

8  from the offense, whichever is greatest; and a mandatory special

9  assessment of $100.

10      8.   Defendant understands that the statutory maximum sentence

11  that the Court can impose for a violation of 18 U.S.C. § 1957 is: 10

12  years' imprisonment; a three-year period of supervised release; a

13  fine of $250,000 or twice the gross gain or gross loss resulting

14  from the offense, whichever is greatest; and a mandatory special

15  assessment of $100.

16      9.   Defendant understands, therefore, that the total maximum

17  sentence for all offenses to which defendant is pleading guilty is:

18  40 years' imprisonment, a five-year period of supervised release, a

19  fine of $1,250,000 or twice the gross gain or gross loss resulting

20  from the offenses, whichever is greatest, and a mandatory special

21  assessment of $200.

22      10.  Defendant understands that defendant will be required to

23  pay full restitution to the victims of the offenses to which

24  defendant is pleading guilty. Defendant agrees that, in return for

25  the USAO's compliance with its obligations under this agreement, the

26  Court may order restitution to persons other than the victims of the

27  offense to which defendant is pleading guilty and in amounts greater

28  than those alleged in the count to which defendant is pleading

guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed and charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges. The parties currently believe that the applicable amount of restitution is approximately **$5,151,497,** but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

12.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral

consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

13.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

14.   Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support the pleas of guilty to the charges described in this agreement and to

11

establish the Sentencing Guidelines factors set forth in paragraph 16 below, but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Between January and August 2019, defendant formed and acquired Hayventure LLC ("Hayventure"), Pioneer LLC ("Pioneer"), and XC International LLC ("XC International") (collectively "defendant's companies"), three shell companies with no business operations that were located in the Central District of California.

Following the outbreak of Covid-19, defendant submitted to the Small Business Administration ("SBA") seven fraudulent Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") loan applications on behalf of Hayventure, Pioneer, and XC International (collectively the "SBA loan applications").

On the SBA loan applications, defendant falsely represented to the administrating banks -- which were all financial institutions that the Federal Deposit Insurance Corporation ("FDIC") insured -- that his companies employed dozens of individuals and earned millions of dollars in revenue, and that he needed the money for payroll and business expenses. Based on the false SBA loan applications, the SBA and its lenders funded six of the loans and disbursed $5,151,497 in fraudulent proceeds to defendant's companies, which defendant then used for non-approved expenditures and for his personal benefit. Defendant applied to have several of the loans forgiven and falsely represented that he used the SBA money entirely for payroll.

Specifically, defendant submitted the following false PPP and EIDL loan applications to the SBA and its administrating banks:

12

a.   **Hayventure PPP loan**: on April 30, 2020, Hayventure applied to Celtic Bank for a PPP loan. On the loan application defendant represented that Hayventure operated in the financial industry and had revenue of $500,000, 10 employees, and monthly payroll of $94,639. In support of the application, defendant submitted a forged bank statement purporting to show that in March 2020, Hayventure's operating account had a balance of $345,133, when in reality the account had a balance of $0. In submitting this application, defendant executed a plan and scheme to obtain money from Celtic Bank, a financial institution that the Federal Deposit Insurance Corporation ("FDIC") insured, by material false and fraudulent pretenses, representations, and promises. Based on the false loan application, Celtic Bank approved the application and disbursed $236,597 in PPP loan funds to Hayventure.

b.   **Hayventure EIDL loan**: on June 18, 2020, defendant electronically submitted to the SBA an application for an EIDL loan on behalf of Hayventure, falsely representing that Hayventure had 13 employees. On June 22, 2020, in response to the false loan application, the SBA disbursed EIDL loan proceeds in the amount of $149,900 to Hayventure via an electronic money transfer.

c.   **Pioneer PPP loans**: on June 10, 2020, defendant electronically applied to Radius Bank for a PPP loan on behalf of Pioneer. On the application, defendant falsely represented that Pioneer had 33 employees and monthly payroll of $264,000. On June 19, 2020, in response to the false loan application, Radius Bank disbursed $660,000 in PPP loan proceeds to Pioneer. On October 7, 2020, defendant applied to have the loan forgiven, again falsely representing that Pioneer had 33 employees both at the time of the

loan and forgiveness applications, and that Pioneer used all proceeds of the loan on payroll costs.

On January 20, 2021, defendant electronically submitted an application to Radius Bank for a second draw of PPP loan funding, falsely representing that Pioneer had 33 employees and monthly payroll of $264,000. On March 3, 2021, in response to the false loan application, Radius Bank disbursed $660,000 in additional loan proceeds to Pioneer.

d. **XC International PPP loans:** on August 6, 2020, defendant electronically applied to Newtek Small Business Finance for a PPP loan on behalf of XC International. On the application defendant falsely represented that XC International had 42 employees and monthly payroll of $637,000. In support of the application, defendant submitted a forged letter from a bank employee. On August 10, 2020, in response to the false loan application, Newtek disbursed $1,592,500 in PPP loan proceeds to XC International.

On February 2, 2021, defendant applied to Newtek for a second draw on the XC International loan in the amount of $1,592,500. Newtek noticed irregularities with the documents defendant provided during the second draw process, suspended defendant's XC International account, and did not fund the second PPP loan draw.

On March 19, 2021, defendant submitted an application to Amur Equipment and Finance ("AEF") for a second PPP loan on behalf of XC International. On the application defendant falsely represented that XC International had 42 employees with an average monthly payroll of $737,000, and earned $10.167 million of revenue in 2019 and $7,625,248 of revenue in 2020. In support of the loan application, defendant submitted, among other things, a forged bank statement

showing that in February 2020 XC International's bank account had a beginning balance of $2,219,720.63 and a payroll transaction of $737,000, when in reality the account had a zero balance at the beginning of the month and no transactions in February 2020. On March 29 2021, AEF disbursed $1,842,500 in PPP loan proceeds to XC International.

At the times defendant submitted the foregoing SBA loan applications on behalf of Hayventure, Pioneer, and XC International, those companies had no employees or substantial business operations. The IRS has no records for the tax years 2019 through 2021 that any of defendant's three companies filed income or employment tax returns. The California Employment Development Department has no record of defendant's companies ever operating or paying wages in California. And in February 2021, in connection with an application for a United States passport, defendant told US State Department officials that he wanted the passport because he believed it would help him get a job.

Moreover, rather than using the PPP and EIDL loan money ("proceeds") on SBA-approved business expenses, defendant spent the proceeds, which all represented criminally derived property, on personal expenditures, including real estate, private investments, and credit card, divorce, retail, entertainment, and travel expenses. Several of the personal expenditures defendant made using the Hayventure, Pioneer, and XC International SBA loan proceeds include the following:

a.    Between April 2020 and March 2021, defendant transferred $2.979 million in proceeds to his personal TD Ameritrade account.

b.   In March 2021, defendant spent $835,460.95 in proceeds on the purchase of a personal residence located at 33 Almond Tree Lane, Irvine, California.

c.   On March 29, 2021, defendant transferred $970,000 to Company 1 in the form of a personal investment.

d.   On July 2, 2021, defendant transferred $578,115 to Company 2 for the purchase of real estate at 1300 Latigo Canyon Road, Malibu, California.

e.   On July 27, 2021, from the Central District of California, defendant transferred $1,211,487.30 to Company 3 for the purchase of a personal real estate investment property located at 1857 Phillips Way, Los Angeles, California. This transfer was a monetary transaction through a financial institution, and defendant knew that the transaction involved more than $10,000 in criminally derived property that was in fact derived from bank fraud.

f.   On December 13, 2021, defendant transferred $250,000 in proceeds to Company 4 for a personal investment.

g.   On April 7, 2021, defendant transferred $150,000 to a state-run investment fund for a personal investment.

The amount of fraudulent proceeds that the SBA and its administrating banks disbursed to Budamala was **$5,151,497.**

<u>SENTENCING FACTORS</u>

15.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot

16

have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

16. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| Base Offense Level: | 27 | U.S.S.G. §§ 2S1.1(a)(1), 2B1.1(a)(1), (b)(1)(J), (b)(17)(A) |
|---|---|---|
| Money laundering | +1 | U.S.S.G. § 2S1.1(b)(2)(A) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

17. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

18. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

19. Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.    The right to persist in a plea of not guilty.

      b.    The right to a speedy and public trial by jury.

      c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be

represented by counsel -- and if necessary have the Court appoint
counsel -- at every other stage of the proceeding.

    d.   The right to be presumed innocent and to have the
burden of proof placed on the government to prove defendant guilty
beyond a reasonable doubt.

    e.   The right to confront and cross-examine witnesses
against defendant.

    f.   The right to testify and to present evidence in
opposition to the charges, including the right to compel the
attendance of witnesses to testify.

    g.   The right not to be compelled to testify, and, if
defendant chose not to testify or present evidence, to have that
choice not be used against defendant.

    h.   Any and all rights to pursue any affirmative
defenses, Fourth Amendment or Fifth Amendment claims, and other
pretrial motions that have been filed or could be filed.

<u>WAIVER OF RETURN OF DIGITAL DATA</u>

    20.  Understanding that the government has in its possession
digital devices and/or digital media seized in connection with this
case, defendant waives any right to the return of digital data
contained on those digital devices and/or digital media and agrees
that if any of these digital devices and/or digital media are
returned to defendant, the government may delete all digital data
from those digital devices and/or digital media before they are
returned to defendant.

<u>WAIVER OF APPEAL OF CONVICTION</u>

    21.  Defendant understands that, with the exception of an
appeal based on a claim that defendant's guilty pleas were

involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

22.   Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of **25** and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than **$5,151,497**; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

23.   The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of **25** and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

<u>WAIVER OF COLLATERAL ATTACK</u>

24.   Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

25.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations

will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

26.  Defendant agrees that if the counts of conviction are vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

27.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

28.  Defendant agrees that if defendant, at any time after the effective date of this Agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw

the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

29.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

30. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

31. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 16 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

32. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain

bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

33.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

34.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
United States Attorney

_____     6/2/22
GREGORY BERNSTEIN             Date
Assistant United States Attorney

_____     5/17/22
Raghavender Reddy Budamala    Date
Defendant

_____     5/17/22
Diane Bass                  Date
Attorney for Defendant
Raghavender Reddy Budamala

25

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          5/17/22
Raghavender Reddy Budamala                Date
Defendant

26

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Raghavender Reddy Budamala (aka "Reddy Raghav Budamala")'s attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          5/17/22
Diane Bass                         _____
Attorney for Defendant             Date
Raghavender Reddy Budamala

27